UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAVIN MAURICE RHODES,

    Plaintiff,

    v.

D. FORD, et al.,

    Defendants.

Case No. 20-cv-03128-PJH

**ORDER**

Plaintiff, a state prisoner, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983. He alleges that defendants failed to protect him and retaliated against him for his protected conduct. Defendants have filed a motion for summary judgment on administrative exhaustion grounds. Plaintiff filed an opposition and defendants filed a reply.

**MOTION FOR SUMMARY JUDGMENT**

**Background**

The court ordered service on the following claims and defendants:

1. On December 13, 2019, defendant Ford stated that he received an email from defendant litigation coordinator Reynolds that he should not make any more legal copies for plaintiff because of prison regulations and that Reynolds wanted plaintiff to dismiss his federal habeas petition.

2. On December 26, 2019, defendants Ford and Buckhorn sought to have plaintiff withdraw an inmate appeal, and when he refused, they confiscated his legal papers and filed a false rules violation report.

3. On January 22, 2020, defendants Foulknier and Bond ordered plaintiff to strip down to his underwear and then told other prisoners that all cells were being searched due to plaintiff filing complaints on library staff and that they should deal with plaintiff on the yard.

4. On January 28, 2020, defendants Ford and Buckhorn conspired to have plaintiff assaulted by other inmates by manipulating the computer system to have plaintiff be at the library at a specific time, at which point Ford pointed out plaintiff to several inmates who attacked him, allegedly in retaliation for the filing of staff complaints.

5. Defendant Markel told plaintiff that as long as he kept filing complaints he would be double celled. She then had plaintiff taken to classification, where he was denied a transfer and falsely labeled as a gang member. On February 3, 2020, Lunsford, Markel and Royal came to plaintiff's housing section and informed the prisoners there that the entire prison was going on lockdown due to plaintiff's filing of complaints.

6. On March 22, 2020, defendant Corder told plaintiff that if he did not dismiss his federal habeas petition then he would be celled with a prisoner with Covid. Plaintiff refused to dismiss the petition and a rules violation report was filed against him for refusing a cellmate.

7. Defendant Chapa fabricated a rules violation report against plaintiff in retaliation for not withdrawing an appeal.

8. On April 15, 2020, defendants Chapa and Hamm went to plaintiff's cell and broke his typewriter due to his filing of appeals. Chapa also arranged to have a gang member moved near plaintiff who later attacked him.

9. On August 28, 2020, defendant Hernandez fabricated a rules violation report against plaintiff for his refusal to dismiss his federal habeas petition.[1]

10. On September 1, 2020, defendant Hernandez attempted to have plaintiff withdraw an appeal and, when plaintiff refused, Hernandez brought over another inmate

---

[1] Claims nine and ten originally identified Perner as defendant, but it was determined that Hernandez was the appropriate individual. See Docket No. 49.

2

to threaten plaintiff.

**Facts**

A review of the record indicates that the following facts are undisputed unless otherwise noted:

Plaintiff's claims occurred between December 2019 and September 2020. First Amended Complaint ("FAC") Docket No. 16 at 2, 7. Plaintiff filed the original complaint on May 6, 2020, and the operative FAC on September 28, 2020. Docket Nos. 1, 16. Between December 2019 and September 2020, plaintiff filed seven administrative grievances. Motion for Summary Judgment ("MSJ") Russell Decl. ¶¶ 6-14. Of the seven grievances only one grievance, PBSP-19-02840, received a third-level response. MSJ Moseley Decl. ¶¶ 6-8, Exs. 1-2. In PBSP-19-02840, plaintiff argued that the law librarian failed to follow state regulations while denying plaintiff's request for legal copies. *Id*. Ex. 2. This grievance presented no allegations of retaliation or failure to protect. *Id*.

Three of the grievances were screened out or rejected and never fully exhausted: PBSP-B-20-01069, PBSP-A-20-00001 and PBSP-B-20-00819. Russell Decl. ¶¶ 12-14, Exs. 6-8.

In PBSP-B-20-01069, plaintiff alleged that he was improperly found guilty at an RVR hearing and that defendant correctional officer Chapa chose another inmate to potentially engage in cell fights with plaintiff. *Id*. Ex. 6. This grievance was rejected at the second level of review on the grounds that it involved multiple issues that did not derive from a single event and could not be addressed in a single response. *Id*. Ex. 6 at 86. This grievance did not discuss retaliation by Chapa nor a failure to protect. *Id*. at 87, 89. The only allegation of retaliation was against nonidentified appeals coordinators, but no details were provided. *Id*. The grievance mentioned no fight or any injury suffered, on that if plaintiff was forced to take a cellmate, three would be a fight. *Id*. Plaintiff resubmitted this appeal on July 11, 2020. Opposition Ex. 4. The resubmitted appeal involved the same subject matter as the original appeal. *Id*. Plaintiff never received a response. Opposition at 14.

In PBSP-A-20-00001, plaintiff alleged that prison staff retaliated against him for filing grievances by utilizing other inmates to deny plaintiff access to the law library. *Id*. ¶ 13, Ex. 7.  This grievance was rejected at the first level of review on the grounds that plaintiff had exceeded the allowable number of appeals filed in a fourteen-day calendar period. *Id*.  This grievance alleged retaliation but only generally; it did not name any of the defendants in this action nor did it identify any protected conduct plaintiff engaged in that served as the basis for the retaliation. *Id*. Ex. 7 at 113, 115.

In PBSP-B-20-00819, plaintiff alleged that on April 15, 2020, he received a custody review form that falsely indicated he was an associate of a prison gang. *Id*. ¶ 14, Ex. 8.  This grievance was rejected at the first level on the grounds that it was missing necessary supporting documents. *Id*.  This grievance did not present any allegations of retaliation or failure to protect against any specific individuals. *Id*. Ex. 8 at 119, 121.

Plaintiff filed three other grievances between December 2019 and September 2020 that were still pending final review when plaintiff filed his FAC on September 28, 2020: PBSP-20-00187, PBSP-20-00452 and PBSP-20-00604.  Moseley Decl. ¶¶ 9-11, Exs. 3-5.

In PBSP-20-00187, plaintiff alleged that several defendants in this case retaliated against plaintiff for the filing of earlier grievances by interfering with his ability to make copies at the law library and bring supplies to the law library. *Id*. ¶ 9, Ex. 3.  Plaintiff initially submitted this grievance on January 22, 2020. *Id*. at 28.  He submitted it to the third level or Office of Appeals ("OOA") on March 9, 2020, but a response was not issued until December 10, 2020.  Reply, Harder Decl. ¶ 8.

In PBSP-20-00452, plaintiff alleged that defendant Buckhorn directed other inmates to attack plaintiff and attempted to move plaintiff to a different facility in retaliation for the filing of an inmate appeal. *Id*. ¶ 10, Ex. 4.  Plaintiff initially submitted this grievance on February 27, 2020. *Id*. at 42.  He submitted it to the OOA on April 17, 2020, but a response was not issued until March 17, 2021.  Reply, Harder Decl. ¶ 9.

4

In PBSP-20-00604, plaintiff alleged that defendant Ford falsified an RVR and that the hearing officer misquoted plaintiff's statement at the RVR hearing, all in retaliation for the filing of a grievance against Ford. *Id.* ¶ 11, Ex. 5. Plaintiff initially submitted this grievance on March 19, 2020, but defendants have not provided a date when it was submitted to the OOA or when a response was issued, or even if a response has been issued. *Id.* at 59; MSJ at 9.

**Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

"The PLRA [Prison Litigation Reform Act] mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

5

*Id*. at 1168.  The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust.  *Id*. at 1172.  If the defendant meets that burden, the prisoner must then present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  *Id*.  The ultimate burden of proof remains with the defendant, however.  *Id*.  If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.  *Id*. at 1166.  But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding.  *Id*.

An inmate "need not exhaust unavailable [remedies]."  *Ross v. Blake*, 578 U.S. 632, 642 (2016).  An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 643-44.

During most of the relevant time, CDCR provided an administrative appeals process in accordance with sections 3084 and 3085 of title 15 of the California Code of Regulations. Cal. Code Regs. tit. 15, § 3084.1(a) (repealed 2020).  An inmate could appeal any departmental decision, action, condition, or policy that had a material adverse effect on the inmate's health, safety, or welfare.  *Id*.  Inmates could initiate a review by submitting a CDCR 602 Form, commonly referred to as an appeal form, that described the issue and the requested action.  *Id*. § 3084.2(a) (repealed 2020).

This process consisted of three levels of appeal: (1) first-level appeal, (2) second-level appeal to the institution head or designee, and (3) third-level appeal to the Secretary

6

of CDCR. *Id*. § 3084.7 (repealed 2020).  A substantive decision on an appeal at the third level exhausts CDCR's administrative remedies.  *Id*. § 3084.7(d)(3) (repealed 2020).

Sections 3084 and 3085 were repealed on June 1, 2020.  Prisoners must now follow the procedures set forth in new sections 3480-3487 (eff. June 1, 2020), to dispute a policy, decision or action.

## ANALYSIS

Defendants have met their burden in demonstrating that there was an available administrative remedy, that plaintiff failed to exhaust because the only fully exhausted appeal, PBSP-19-02840, presented no allegations of retaliation or failure to protect. Administrative remedies may not be exhausted where the grievance, liberally construed, does not have the same subject and same request for relief.  *See Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (grievance that complained of visitation restrictions and did not mention an assault or theorize that the visitation restriction imposed was related to the assault, was insufficient to put prison officials on notice that staff conduct contributed to the assault).  This grievance failed to alert prison officials that certain defendants retaliated against plaintiff or failed to protect him.  Moreover, plaintiff concedes that this grievance does not relate to the claims in this action.  Plaintiff's Reply at 19-20.  The issue remains if plaintiff has met his burden in presenting evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him with respect to his other grievances.

It is undisputed that three other grievances plaintiff filed during the relevant time, PBSP-B-20-01069, PBSP-A-20-00001 and PBSP-B-20-00819, were screened out or rejected and never fully exhausted.  Plaintiff argues that these grievances were improperly screened out and that this made the grievance process unavailable to him.  Plaintiff has failed to present evidence showing that there is something in his particular case that made administrative remedies effectively unavailable to him.  However, even assuming administrative remedies were unavailable to plaintiff for these three grievances

7

and the court considered them fully exhausted, the subject of these three grievances fail to correspond to plaintiff's claims in this action.

In *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit noted that "the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id*. at 1120. In *Griffin*, the plaintiff failed to mention in his grievance that prison staff were ignoring a nurse's order that remedied the problem. *Id*. at 1118-19. As a result, the prison officials who were aware of the nurse's order reasonably believed that the order had solved the problem. In view of these facts, the Ninth Circuit concluded that the plaintiff failed to properly exhaust his administrative remedies because he did not provide notice of the prison staff's alleged disregard of the nurse's order and the prison was never alerted "to the nature of his problem." *Id*. at 1121.

Similar to *Griffin*, plaintiff failed to sufficiently alert prison officials that the defendants and claims in this case were being presented in the grievances. In PBSP-B-20-01069, plaintiff alleged that he was improperly found guilty at an RVR hearing and that defendant Chapa chose another inmate to potentially engage in cell fights with plaintiff. This grievance did not discuss retaliation by Chapa nor present any allegations that plaintiff was injured in a fight. The grievance contained a brief sentence stating that appeals coordinators retaliated against plaintiff, but it did not identify anyone by name or provide any more information. The grievance noted that Chapa's title is correctional officer and did not identify him as an appeals coordinator. The grievance was also clear that there was no fight and plaintiff did not allege that he suffered any injury, only that if he was forced to take a cellmate, there would have been a fight. The only claims in this case that could possible relate to this grievance allege that Chapa retaliated against plaintiff and caused plaintiff to be seriously injured in an attack. Prison officials could not know from this grievance that plaintiff was alleging retaliation and that he suffered injuries due to a failure to protect.[2]

---

[2] Even if the resubmitted version of this grievance was deemed exhausted it provided no specific allegations but only referred to the subject matter of PBSP-B-20-01069.

In PBSP-A-20-00001, plaintiff alleged that on December 14, 2019, prison staff retaliated against him for filing grievances by utilizing other inmates to deny plaintiff access to the law library. This grievance generally alleged retaliation but did not identify any defendants in this action nor did it identify any protected conduct plaintiff engaged in that served as the basis for the retaliation. The gravamen of plaintiff's grievance was that inmates working as law library clerks denied him benefits of the law library, were suffering from Stockholm Syndrome and were part of a conspiracy by unnamed prison staff to retaliate against plaintiff and obstruct justice. Russell Decl. Ex. 7 at 115. Similar to *Griffin*, plaintiff failed to sufficiently alert prison officials that he was arguing that defendants Ford and Reynolds would not make legal copies for plaintiff unless he dismissed a federal habeas action. Plaintiff failed to properly alert prison officials to the nature of the claim in this action.[3]

In PBSP-B-20-00819, plaintiff alleged that on April 15, 2020, he received a custody review form that falsely indicated he was an associate of a prison gang. This grievance did not present any allegations of retaliation or failure to protect against any specific individuals. Prison officials could not have known that plaintiff was attempting to seek relief regarding retaliation or the failure to protect. Thus, none of these grievances would serve to exhaust the claims in this action even if the grievances had been fully exhausted.

Plaintiff filed three other grievances between December 2019 and September 2020 that were still pending when plaintiff filed his FAC on September 28, 2020: PBSP-20-00187, PBSP-20-00452 and PBSP-20-00604.

---

[3] In *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014), the Ninth Circuit reviewed a district court's 2008 ruling that plaintiff had failed to exhaust available administrative remedies as to an officer not linked to wrongdoing in plaintiff's grievance and noted that neither the PLRA itself nor California regulations required an inmate to name the responsible parties who may ultimately be sued. As of January 28, 2011, California regulations require that the appeal name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020). Plaintiff submitted this grievance while this regulation was in effect.

9

In PBSP-20-00187, plaintiff alleged that several defendants in this case retaliated against plaintiff, for filing earlier grievances, by interfering with his ability to make copies at the law library and bring supplies to the law library. Plaintiff initially submitted this grievance on January 22, 2020. He submitted it to the third level or Office of Appeals ("OOA") on March 9, 2020, but a response was not issued until December 10, 2020.

In PBSP-20-00452, plaintiff alleged that defendant Buckhorn directed other inmates to attack plaintiff and attempted to move plaintiff to a different facility in retaliation for the filing of an inmate appeal. Plaintiff initially submitted this grievance on February 27, 2020. He submitted it to the OOA on April 17, 2020, but a response was not issued until March 17, 2021.

In PBSP-20-00604, plaintiff alleged that defendant Ford falsified an RVR and that the hearing officer misquoted plaintiff's statement at the RVR hearing, all in retaliation for the filing of a grievance against Ford. Plaintiff initially submitted this grievance on March 19, 2020, but defendants have not provided a date when it was submitted to the OOA or when a response was issued, or even if a response has been issued.

An action must be dismissed unless the prisoner exhausted his available administrative remedies before he or she filed suit, even if the prisoner fully exhausts while the suit is pending. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002); see *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006) (where administrative remedies are not exhausted before the prisoner sends his complaint to the court it will be dismissed even if exhaustion is completed by the time the complaint is actually filed). But a prisoner satisfies the exhaustion requirement as long as he exhausted his administrative remedies prior to filing an amended complaint. *See Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th Cir. 2010) (amended complaint raised new claims which arose after the original complaint was filed).

Defendants argue that the above three grievances were not fully exhausted prior to the filing of the FAC on September 28, 2020, and that therefore the associated claims must be dismissed without prejudice. However, if prison officials fail to respond to an

inmate's appeals within the timeline provided, this failure can potentially render the administrative remedies unavailable. *See Fordley v. Lizarraga*, 18 F.4th 344, 347, 357-58 (9th Cir. 2021). The Ninth Circuit in *Fordley* declined to "adopt a bright-line rule that any delay in a prison's response to an inmate's grievance is sufficient to render administrative remedies unavailable." *Id*. at 358. The Circuit found that the failure of the prison to respond to the inmate's grievance over the course of several months rendered administrative remedies unavailable. *Id*.

The above three grievances were filed when the grievance process was still governed by the prior regulations of Title 15 of the California Code of Regulations. Defendants argue that under Title 15, third-level responses shall be completed within 60 working days from the date of receipt by the third-level Appeals Chief. Reply at 5; Cal. Code Regs., tit. 15 § 3084.8(c)-(d) (repealed 2020). Exceptions to the time limits concerning third-level responses are authorized under the following circumstances: (1) unavailability of the inmate or parolee, or staff, or witnesses; (2) the complexity of the decision, action, or policy requiring additional research; (3) necessary involvement of other agencies or jurisdictions; or (4) state of emergency pursuant to subsection 3383(c) requiring the postponement of nonessential administrative decisions and actions. *Id*.

As noted above, new regulations regarding inmate appeals took effect on June 1, 2020, while the three appeals were pending. At that time the OOA transitioned to a new tracking system, and defendants contend that this caused a delay for providing decisions for appeals submitted prior to June 2020. Reply, Harder Decl. ¶ 10. In addition, defendants argue that there was an increase in new appeals so there was limited staff to process the older appeals. *Id*.

With respect to the above three grievances that were pending when plaintiff filed the FAC, the court finds that plaintiff has met his burden in demonstrating that administrative remedies were unavailable for the allegations he presented in these grievances. There is no appearance of bad faith on behalf of prison officials in the lengthy delay; rather, the transitioning from the old grievance system to the new

grievance system seems to have led to the extreme response time. While state regulations did provide for exceptions to the 60 working-day deadline, one delay was ten months, another was eleven months and for the third grievance it is unclear if a response has been provided at all. While the Ninth Circuit did not adopt a bright-line rule that any delay in a prison's response will render administrative remedies unavailable, the court finds that these delays in this case were well beyond an acceptable delay. The court considers these three grievances to be exhausted.

## Further Proceedings

While the court has denied defendants' motion in part, no evidentiary hearing is required. The denial was with respect to the delay in the response to grievances, and there were no disputed factual issues that require a hearing.

This case proceeds on the ten numbered claims set forth above regarding twelve different defendants and various incidents over a nine-month period. The court has found that only three grievances were exhausted. The court will set a schedule for additional briefing for the parties to brief the issue of which claims were exhausted by the three grievances. Once that issue is resolved the court will provide defendants an opportunity to file an additional summary judgment motion on the merits.

## CONCLUSION

1. The court will defer on issuing a final ruling of the motion for summary judgment until further briefing has been submitted.

2. Defendants shall file additional briefing by **May 31, 2022**, regarding what claims were exhausted and what claims were not exhausted and why. Defendants should also clarify if the claims against defendant Hernandez (claims nine and ten) are part of this exhaustion motion. Plaintiff shall file responsive briefing by **June 30, 2022**. Plaintiff is informed that the court will determine which claims are exhausted based on the three exhausted grievances and the substance of their allegations.

Plaintiff should tailor his briefing accordingly and his briefing may not exceed **30 pages.**

**IT IS SO ORDERED.**

Dated: May 4, 2022

                                                                */s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge