UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAVIN MAURICE RHODES,<br><br>    Plaintiff,<br><br>    v.<br><br>D. FORD, et al.,<br><br>    Defendants. | Case No. 20-cv-03128-PJH<br><br>**ORDER**<br><br>Re: Dkt. Nos. 56, 79 |

    Plaintiff, a state prisoner, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983.  He alleges that defendants failed to protect him and retaliated against him for his protected conduct.  Defendants filed a motion for summary judgment on administrative exhaustion grounds.  Plaintiff filed an opposition and defendants filed a reply.

    On May 4, 2022, the court addressed the substance of the summary judgment motion and found that several of plaintiff's grievances failed to exhaust his administrative remedies.  Docket No. 69 at 7-9.  The court also found that administrative remedies were unavailable for three grievances due to the lengthy delay in the third level of review providing a response, and were thus considered exhausted.  *Id*. at 9-11.  However, it was unclear which of plaintiff's ten claims were exhausted by those three grievances.  The court ordered the parties to file briefing regarding which claims were exhausted by the grievances.  The parties timely filed briefing.  Docket Nos. 76, 80.

**MOTION FOR SUMMARY JUDGMENT**

**Background**

    The court ordered service on the following claims and defendants:

1. On December 13, 2019, defendant Ford stated that he received an email from defendant litigation coordinator Reynolds that he should not make any more legal copies for plaintiff because of prison regulations and that Reynolds wanted plaintiff to dismiss his federal habeas petition.

2. On December 26, 2019, defendants Ford and Buckhorn sought to have plaintiff withdraw an inmate appeal, and when he refused, they confiscated his legal papers and filed a false Rules Violation Report ("RVR").

3. On January 22, 2020, defendants Foulknier and Bond ordered plaintiff to strip down to his underwear and then told other prisoners that all cells were being searched due to plaintiff filing complaints on library staff and that they should deal with plaintiff on the yard.

4. On January 28, 2020, defendants Ford and Buckhorn conspired to have plaintiff assaulted by other inmates by manipulating the computer system to have plaintiff be at the library at a specific time, at which point Ford pointed out plaintiff to several inmates who attacked him, allegedly in retaliation for the filing of staff complaints.

5. Defendant Markel told plaintiff that as long as he kept filing complaints he would be double celled. She then had plaintiff taken to classification, where he was denied a transfer and falsely labeled as a gang member. On February 3, 2020, Lunsford, Markel and Royal came to plaintiff's housing section and informed the prisoners there that the entire prison was going on lockdown due to plaintiff's filing of complaints.

6. On March 22, 2020, defendant Corder told plaintiff that if he did not dismiss his federal habeas petition then he would be celled with a prisoner with Covid. Plaintiff refused to dismiss the petition and a RVR was filed against him for refusing a cellmate.

7. Defendant Chapa fabricated a RVR against plaintiff in retaliation for not withdrawing an appeal.

8. On April 15, 2020, defendants Chapa and Hamm went to plaintiff's cell and broke his typewriter due to his filing of appeals. Chapa also arranged to have a gang member moved near plaintiff who later attacked him.

9. On August 28, 2020, defendant Hernandez fabricated a RVR against plaintiff for his refusal to dismiss his federal habeas petition.[1]

10. On September 1, 2020, defendant Hernandez attempted to have plaintiff withdraw an appeal and, when plaintiff refused, Hernandez brought over another inmate to threaten plaintiff.

**Facts**

The court previously found the following three grievances were exhausted: PBSP-20-00187, PBSP-20-00452 and PBSP-20-00604.  Motion for Summary Judgment ("MSJ") Moseley Decl. ¶¶ 9-11, Exs. 3-5.

On January 22, 2020, plaintiff submitted grievance PBSP-20-00187, where he alleged that Ford, Buckhorn, Lunsford, Cummings, Brunner and Tidwell retaliated against him for submitting a grievance on December 14, 2019, regarding Ford's refusal to make legal copies.  *Id*. Ex. 3 at 29, 31.  Plaintiff alleged that Ford called the housing unit and instructed staff not to release plaintiff and later other defendants cancelled his law library time, and, on another occasion, defendants forced plaintiff to leave the law library.  *Id*. at 31.  He also alleged that Ford and Buckhorn provided cookies to other inmates and then held in an in-depth conversation stating that inmates who file grievances were the enemy in an attempt to incite anger against plaintiff.  *Id*.

On February 27, 2020, plaintiff submitted grievance PBSP-20-00452, where he alleged that a February 5, 2020, classification chrono was full of lies which was a form of retaliation for filing a lawsuit against the prison and a prior grievance.  *Id*. Ex. 4 at 42, 44.  He also stated that Markel lied.  *Id*. at 44.  He also alleged that Buckhorn directed other inmates to attack plaintiff in retaliation for a prior grievance and Buckhorn attempted to move plaintiff to a different facility in retaliation.  *Id*. at 44.[2]

---

[1] Claims nine and ten originally identified Perner as defendant, but it was determined that Hernandez was the appropriate individual.  See Docket No. 49.

[2] It is not clear if plaintiff is alleging a separate attack due to Buckhorn or if he is referring to the attack referenced in grievance PBSP-20-00187.

3

1    On March 19, 2020, plaintiff submitted grievance PBSP-20-00604, where he alleged that on January 16, 2020, defendant Ford falsified RVR Log No. 0695553 as a form of retaliation for filing a prior grievance and plaintiff was denied the right to present a defense and the hearing officer for the RVR misquoted plaintiff's statements. *Id*. Ex. 5 at 59, 61.

**Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

"The PLRA [Prison Litigation Reform Act] mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To the extent that the evidence in the record permits, the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the PLRA is a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Id*. at 1168. The burden is on the defendant to prove that there was an available

administrative remedy that the plaintiff failed to exhaust. *Id*. at 1172. If the defendant meets that burden, the prisoner must then present evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. *Id*. The ultimate burden of proof remains with the defendant, however. *Id*. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*. at 1166. But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id*.

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

During most of the relevant time, CDCR provided an administrative appeals process in accordance with sections 3084 and 3085 of title 15 of the California Code of Regulations. Cal. Code Regs. tit. 15, § 3084.1(a) (repealed 2020). An inmate could appeal any departmental decision, action, condition, or policy that had a material adverse effect on the inmate's health, safety, or welfare. *Id*. Inmates could initiate a review by submitting a CDCR 602 Form, commonly referred to as an appeal form, that described the issue and the requested action. *Id*. § 3084.2(a) (repealed 2020).

This process consisted of three levels of appeal: (1) first-level appeal, (2) second-level appeal to the institution head or designee, and (3) third-level appeal to the Secretary of CDCR. *Id*. § 3084.7 (repealed 2020). A substantive decision on an appeal at the third

level exhausts CDCR's administrative remedies. *Id*. § 3084.7(d)(3) (repealed 2020).

Sections 3084 and 3085 were repealed on June 1, 2020. Prisoners must now follow the procedures set forth in new sections 3480-3487 (eff. June 1, 2020), to dispute a policy, decision or action.

## ANALYSIS

The court notes that plaintiff's filings in this case and his grievances from the prison are difficult to understand and it is not always entirely clear the substance of his allegations. The court has liberally construed his filings in light of his status as a pro se incarcerated party. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("We have, therefore, held consistently that courts should construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly."). However, the court does not agree with plaintiff's contention that the simple use of "the talismanic phrase 'retaliation'", serves to exhaust a claim. Docket No. 80 at 21-22. As discussed below, the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution and requires some detail.

After reviewing the claims in this action, the court finds that the first grievance, PBSP-20-00187, exhausted part of plaintiff's claim two alleging that defendants Ford and Buckhorn attempted to coerce plaintiff into withdrawing a prior grievance by offering food to gang member inmates in order to intimidate plaintiff to withdraw the grievance. This part of claim two continues and the court addresses the other part of claim two below.

Plaintiff also raised new claims in grievance PBSP-20-00187, on March 5, 2020, for the second level of reivew. MSJ Moseley Decl. Ex. 3 at 30, 32. He alleged that Ford filed a fabricated RVR on January 16, 2020, and that defendants Lunsford, Ford, Buckhorn, Faulkner, Bonds and others removed plaintiff from his cell and walked him around the other cells and told the prisoners that plaintiff was the reason why cells were being searched. *Id*. at 32. Plaintiff also alleged that Ford manipulated the computer system to have plaintiff go to an appointment at a certain time where he could be attacked by other inmates. *Id*. These new allegations related to other claims in this

action.

However, these new allegations were not properly exhausted. Title 15 mandated that prisoners discuss only one issue or related issues per each inmate appeal filed. Cal Code Regs. tit. 15, § 3084.2(a)(1). The regulations stated that inmates shall not combine unrelated issues on a single appeal form for the purpose of circumventing appeal filing requirements. *Id*. Moreover, the regulations required inmates to state "all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form . . . ." *Id*. § 3084.2(a)(4). Proper exhaustion also required a substantive decision at each level of review. *Id*. § 3084.1(b). An inmate could not circumvent the appeals process by raising new issues for the first time at the second or third level of review. *Id*. §§ 3084.1(b), 3084.6(b)(16).

Plaintiff's inclusion of these allegations at the second level of the appeals process was improper and did not exhaust these claims. Even though the court found this appeal to be exhausted because administrative remedies were unavailable due to the lengthy delay in the third level of review providing a response, plaintiff was still required to follow proper procedures and present all his allegations in the original grievance.

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91 (footnote omitted). This grievance only exhausted the part of claim two noted above.

The second grievance, PBSP-20-00452, raised various allegations including that defendant Buckhorn directed other inmates to attack plaintiff in retaliation for a prior grievance and that Buckhorn attempted to move plaintiff to a different facility in retaliation. It is not clear if this act of retaliation by Buckhorn is the same allegation from claim two that the court found exhausted above. To the extent that grievance PBSP-20-00452

refers to this same claim of retaliation, the court has already found that to be properly exhausted. Yet, even liberally construed, this grievance fails to exhaust any other of plaintiff's claims against Buckhorn.[3]

Grievance PBSP-20-00452 also alleged that a February 5, 2020, classification chrono was full of lies which was a form of retaliation for the filing a lawsuit against the prison and a prior grievance. He also stated that Markel lied. Only part of claim five could possibly relate to this grievance. In claim five plaintiff alleges that various defendants including Markel retaliated against plaintiff through their handling and denial of an inmate appeal filed in January 2020. While plaintiff states that Markel retaliated against him in claim five, he does not describe any classification chrono from February 5, 2020, in claim five, which is the key subject of the grievance  The brief general mention of Markel in the grievance is too vague to sufficiently alert prison officials to the nature of the issue that plaintiff presents in claim five. Furthermore, the grievance notes that another party, not Markel, was responsible for the retaliation.

In *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit noted that "the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id*. at 1120. In *Griffin*, the plaintiff failed to mention in his grievance that prison staff were ignoring a nurse's order that remedied the problem. *Id*. at 1118-19. As a result, the prison officials who were aware of the nurse's order reasonably believed that the order had solved the problem. In view of these facts, the Ninth Circuit concluded that the plaintiff failed to properly exhaust his administrative remedies because he did not provide notice of the prison staff's alleged disregard of the nurse's order and the prison was never alerted "to the nature of his problem." *Id*. at 1121.

Similar to *Griffin*, plaintiff failed to sufficiently alert prison officials that the defendants and claims in this case were being presented in the grievance. To the extent

---

[3] To the extent plaintiff also attempted to grieve about the alleged January 28, 2020, incident where defendants manipulated the computer system, this grievance was insufficient.

8

plaintiff was raising issues about Markel denying an appeal or a transfer to a different prison, this grievance was insufficient. Simply that plaintiff called Markel a liar in this grievance would not put prison officials on notice that Markel summoned plaintiff to her office and told him that she was keeping him double celled and near enemies as a form of retaliation as plaintiff alleges in claim five. This claim was not exhausted.

Similar to the first grievance discussed above, plaintiff raised new allegations in the second grievance, PBSP-20-00452, for the first time at the second level of review. Many of the new allegations occurred after the filing of the grievance at the first level, and for the same reasons above, plaintiff's inclusion of these allegations at the second level of the appeals process was improper and did not exhaust these claims.

After reviewing the claims in this action, the court finds that the third grievance, PBSP-20-00604, exhausted the other part of plaintiff's claim two alleging that Ford filed a false RVR against plaintiff as a form of retaliation for an earlier grievance. While there are some minor discrepancies between the grievance and the allegations in claim two, liberally construing the filings, the claim is sufficient to proceed. No other claims in this action were exhausted in this grievance.

## CONCLUSION

1. For the reasons set forth in this order and the court's prior order (Docket No. 69) defendants' motion for summary judgment (Docket No. 56) is **GRANTED in part and DENIED in part**. This action continues on plaintiff's claim two alleging retaliation against defendant Ford and Buckhorn in that they attempted to coerce plaintiff into withdrawing a prior grievance by offering food to gang member inmates in order to intimidate plaintiff to withdraw the grievance and that Ford issued a false RVR as a form of retaliation. All other claims and defendants are dismissed without prejudice from this action as unexhausted. Plaintiff's motion for an extension is (Docket No. 79) is **GRANTED** and the court has reviewed his supplemental filing.

2. In order to expedite the resolution of this case, the court orders as follows:

   a. No later than sixty days from the date of service, defendants shall file a

motion for summary judgment. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56, and shall include as exhibits all records and incident reports stemming from the events at issue. If defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the court prior to the date the summary judgment motion is due. All papers filed with the court shall be promptly served on the plaintiff.

      b. At the time the dispositive motion is served, defendants shall also serve, on a separate paper, the appropriate notice or notices required by *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Wyatt v. Terhune*, 315 F.3d 1108, 1120 n. 4 (9th Cir. 2003). *See Woods v. Carey*, 684 F.3d 934, 940-941 (9th Cir. 2012) (*Rand* and *Wyatt* notices must be given at the time motion for summary judgment or motion to dismiss for nonexhaustion is filed, not earlier); *Rand* at 960 (separate paper requirement).

      c. Plaintiff's opposition to the dispositive motion, if any, shall be filed with the court and served upon defendants no later than thirty days from the date the motion was served upon him. Plaintiff must read the attached page headed "NOTICE -- WARNING," which is provided to him pursuant to *Rand v. Rowland*, 154 F.3d 952, 953-954 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

      d. If defendant wishes to file a reply brief, he shall do so no later than fifteen days after the opposition is served upon her.

      e. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

   3. All communications by plaintiff with the court must be served on defendant, or defendant's counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

   4. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

5.  It is plaintiff's responsibility to prosecute this case.  Plaintiff must keep the court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address."  He also must comply with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: September 12, 2022

    */s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge