UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAVIN MAURICE RHODES,

    Plaintiff,

v.

D. FORD, et al.,

    Defendants.

Case No. 20-cv-03128-PJH

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 87, 100

This is a civil rights case brought pro se by a state prisoner under 42 U.S.C. § 1983.  His claims arise from his detention at Pelican Bay State Prison ("PBSP").  Many defendants and claims were previously dismissed as unexhausted, and this action continues with claims of retaliation against defendants Ford and Buckhorn.  Plaintiff alleges that they attempted to coerce plaintiff into withdrawing a prior grievance by offering food to gang member inmates in order to intimidate plaintiff to withdraw the grievance and that Ford issued a false Rules Violation Report ("RVR") as a form of retaliation.  Defendants filed a motion for summary judgment on the merits.  Plaintiff filed an opposition and defendants filed a reply.  The court has reviewed the evidence and for the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

**MOTION FOR SUMMARY JUDGMENT**

**Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may

affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation). The prisoner must show that the type of

activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

The mere threat of harm can be a sufficiently adverse action to support a retaliation claim. *Shepard v. Quillen*, 840 F.3d 686, 688-89 (9th Cir. 2016); *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). A retaliation claim can also be made by a prisoner for adverse actions against him for making written or verbal threats to sue, because such threats "fall within the purview of the constitutionally protected right to file grievances." *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) (district court erred in finding that prisoner did not state a First Amendment retaliation claim for prison's disciplinary actions against him for making threats of legal action if his grievances were not addressed).

**Facts**

**Plaintiff's Allegations**

Plaintiff states that defendants called him to the law library on December 26, 2019. Amended Complaint at 3; MSJ, Lee Decl. Ex. 1, Plaintiff's Deposition ("Deposition") at 16. Plaintiff alleges that they called him to retaliate against him for filing inmate appeal number PBSP-A-19-02480. Amended Complaint at 3. He states that Ford offered him cookies to withdraw the inmate appeal, and when plaintiff refused, Ford used gang members in the library to try to force plaintiff to withdraw his appeal. When that failed, one of the gang members asked Buckhorn, what they should do, at which point Buckhorn gave plaintiff a long, hard and angry stare. *Id*.

Plaintiff further alleges that Ford retaliated against him on January 17, 2020, by calling him to the law library, confiscating his legal papers, and filing a false RVR against plaintiff. *Id*.; Deposition at 24.

**Incident**

A review of the record indicates that the following facts are undisputed unless otherwise noted:

Plaintiff was incarcerated at PBSP at the relevant time. Amended Complaint at 1. Ford is a retired librarian who formerly worked at PBSP.  MSJ, Ford Decl. ¶ 2.  Buckhorn is a correctional counselor at PBSP.  MSJ, Buckhorn Decl. ¶ 2.

On December 14, 2019, plaintiff filed inmate appeal number PBSP-A-19-02480. Docket No. 56, Moseley Decl. Ex. 2 at 14-16.  Plaintiff alleged that a librarian did not make copies of certain legal documents.  *Id*. at 16.  Plaintiff did not identify Ford or Buckhorn as the staff member involved in the initial appeal.  *Id*. at 14-16.  Plaintiff named Ford as being involved in this appeal on February 10, 2020, after the incidents in this case.  *Id*. at 17.

The prison response to appeal number PBSP-A-19-02480, never construed the appeal to concern Buckhorn or Ford and did not establish that either defendant broke any regulations, rules or laws.  *Id*. at 20.

In December 2019, California state prisoners had to request law library access. Cal. Code Regs. Tit. 15, § 3123; Ford Decl. ¶ 3.  At PBSP no inmate could access the law library without first requesting and scheduling an appointment.  Ford Decl. ¶ 3.

On December 14, 2019, plaintiff submitted a law library access request form. MSJ, Rush Decl. Ex. 1 at 1.  Ford received the request two days later and scheduled plaintiff's visit for December 26, 2019.  *Id*.  On January 8 and 14, 2020, plaintiff submitted additional law library access request forms.  *Id*. at 2-3.  Ford received them on January 8 and 15, 2020, and scheduled plaintiff's visit for January 16, 2020.  *Id*.  Plaintiff visited the law library on December 26, 2019 and January 16, 2020.  *Id*. at 4-5.

**Disputed Facts**

According to defendants, Buckhorn's duties as a correctional officer did not require him to visit the law library in 2019.  Buckhorn Decl. ¶ 6.  Buckhorn did not visit the law library at any point on December 26, 2019.  Id. ¶ 8; Ford Decl. ¶ 5.

According to defendants, during plaintiff's December 26, 2019, visit to the law library no prison staff or inmates in the law library engaged with plaintiff regarding any inmate appeals that plaintiff had filed. Ford Decl. ¶ 5. On January 16, 2020, plaintiff acted with visible aggression towards Ford. *Id*. ¶ 7. Due to plaintiff's behavior, Ford had a custody staff remove plaintiff and then entered a rule violation report against him. *Id*. ¶ 7.

Plaintiff disputes defendants' allegations regarding the incidents on December 26, 2019 and January 16, 2020. Opposition at 6-9; 17-19. Plaintiff states that Ford offered him a cookie to withdraw the appeal and when plaintiff refused "gang members without hesitation or provocation, interject[ed] themselves into the conversation between Ford and plaintiff, in defense of Ford, stating: 'why are you starting shit, with Ford? You better drop that appeal, or you got an issue coming." Opposition at 3. At the end of the library session, as plaintiff exited the library, Buckhorn was standing and one of the gang members walked directly to Buckhorn and said, "he refused to drop the appeal, what do you want us to do?" *Id*. at 4. Buckhorn then angrily stared at plaintiff. *Id*.

Plaintiff states that on January 16, 2020, Ford confiscated plaintiff's legal documents and had a false RVR filed. Opposition at 5. Plaintiff states that he did not engage in any disruptive behavior, and this was all in retaliation for the December 14, 2019, appeal PBSP-A-19-02480. *Id*. at 4-5. Plaintiff states that he was interviewed regarding the PBSP-A-19-02480, on January 14, 2020, at the law library, while in Ford's presence. Opposition at 4. Plaintiff stated in the interview, that it was Ford who refused to make legal copies for him in December. Opposition at 18. Plaintiff presents evidence that he was interviewed on January 14, 2020, at the law library. Opposition at 53.

## ANALYSIS

Plaintiff first alleges that defendants retaliated against him on December 26, 2019, due to plaintiff filing an inmate appeal against Ford on December 14, 2019. However, it is undisputed that plaintiff's inmate appeal filed on December 14, 2019, number PBSP-A-19-02480 did not identify Ford or Buckhorn. It is also undisputed that plaintiff only added

5

Ford's name to the appeal on February 10, 2020. Plaintiff does state that he was interviewed regarding the PBSP-A-19-02480, on January 14, 2020, at the law library and in Ford's presence and he stated that it was Ford who refused to make legal copies in December.

Even viewing the evidence in a light most favorable to plaintiff, defendants were not aware on December 26, 2019, that Ford had been named in an inmate appeal. Assuming that the offering of a cookie and that defendants instructed the gang members to threaten plaintiff, there is no evidence connecting the incident to the December 14, 2019, inmate appeal. Moreover, plaintiff's allegation that defendants summoned him to the law library on December 26, 2019, is refuted by the record and the undisputed evidence that shows plaintiff requested law library access.

Defendants have met their burden in demonstrating the absence of a genuine issue of material fact for this incident. Plaintiff has not met his burden in showing a genuine issue for trial. Plaintiff's conclusory statements, with no support that there was retaliation is insufficient. "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). Moreover, the only allegation against Buckhorn, assuming that he was present in the library, is that he angrily stared at plaintiff. This is insufficient to demonstrate retaliation for the prior appeal.

With respect to the January 16, 2020 incident, there are disputed facts about what occurred; specifically, there is a contest between plaintiff's version of the facts and Ford's explanation. If Ford was unaware of the inmate appeal and plaintiff received the RVR for his behavior, then there was no constitutional violation. If plaintiff's facts are true and Ford was made aware a few days before that he was the subject of an inmate appeal and Ford confiscated plaintiffs' legal documents and had plaintiff written up for a RVR due to the inmate appeal, then a jury could conclude there was a constitutional violation.

For all these reasons, summary judgment is denied for Ford with respect to the

January 16, 2020, incident.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Id*. at 205. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such a right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the two-part test that required determining a deprivation first and then deciding whether such right was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555 U.S. at 236.

Regarding the second prong, "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Carroll v. Carman*, 574 U.S. 13, 16 (2014) (citation omitted). The Supreme Court has repeatedly cautioned that courts should not define clearly established law at a high level of generality. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (rejecting the Ninth Circuit's conclusion that the broad history and purposes of the Fourth Amendment supported a finding that the right not to be arrested as a material witness in order to be investigated or preemptively detained was clearly established law); *see, e.g.*, *Kisela v.*

7

*Hughes*, 138 S. Ct. 1148, 1154-55 (2018) (per curiam) (officer entitled to qualified immunity for shooting a woman who was armed with a large knife, was ignoring officers' orders to drop the weapon, and was within striking distance of her housemate; prior cases on excessive force did not clearly establish that it was unlawful to use force under these circumstances where officer may not have been in apparent danger but believed woman was a threat to her housemate); *White*, 137 S. Ct. at 552 (officer entitled to qualified immunity because there was no clearly established law prohibiting a reasonable officer who arrives late to an ongoing police action from assuming that officers already present had followed proper procedure, such as proving officer identification, before using deadly force).

The court has not found a constitutional violation with respect to the December 29, 2019, incident and even if there was a violation, defendants would be entitled to qualified immunity for the reasons set forth above.

With respect to the January 16, 2020 incident, the court found that Ford was not entitled to summary judgment on the merits. With respect to that incident, when viewed in the light most favorable to plaintiff, it would be clear to any reasonable official that a constitutional violation would occur by confiscating legal materials and issuing a RVR in response to an inmate filing an inmate appeal. Ford is not entitled to qualified immunity.

## MOTION TO COMPEL

Plaintiff field a motion to compel that was dismissed without prejudice due to many deficiencies in the motion. Plaintiff has filed an amended motion to compel (Docket No. 100). Plaintiff followed the court's instructions and timely filed the amended motion to compel. At the time that plaintiff filed the amended motion to compel, defendants provided certain discovery to plaintiff. The court addresses the discovery that was not provided.

Many of plaintiff's requests involve the December 26, 2019, incident with the gang members. Plaintiff seeks to discover the identities of the gang members. However, summary judgment has been granted for this claim and no additional evidence would

alter the outcome.  Plaintiff's own evidence demonstrates that defendants were unaware of his inmate appeal and that they were the subject of the inmate appeal on December 26, 2019.

Plaintiff also seeks any and all complaints made against defendants made by prisoners at PBSP.  These requests are overly broad, and plaintiff has not demonstrated how such discovery is related to the claims in this case.  In addition, plaintiff cannot seek discovery to show defendants propensity for acting in accordance with a character or trait.  See Fed. R. Evid. 404(a)(1).  Plaintiff's other requests are similarly overly broad and not relevant to the claims in this action.  Plaintiff also failed to sufficiently address why these discovery requests are necessary to oppose summary judgment.  The motion to compel is denied.

## REFERRAL TO PRO SE PRISONER MEDIATION PROGRAM

This case appears to be a good candidate for the court's mediation program.  Good cause appearing therefore, this case is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.  The proceedings will take place within 120 days of the date this order is filed.  Magistrate Judge Illman will coordinate a time and date for mediation or settlement proceedings with all interested parties and/or their representatives and, within five days after the conclusion of the proceedings, file with the court a report for the prisoner mediation or settlement proceedings.

From time to time, prisoner-plaintiffs have refused to participate in mediation and settlement proceedings.  Although the court assumes that will not occur in this case, the court wants to make clear the consequences if it does.  Judicial resources are consumed preparing for mediation and settlement conferences, and those resources are wasted when a scheduled conference does not proceed.  To avoid that happening, plaintiff is now specifically ordered to attend and participate in the mediation or settlement conference proceedings.  He does not have to reach a settlement or other resolution of his claims, but he absolutely must attend and participate in all the mediation or settlement

United States District Court
Northern District of California

conference proceedings. The conference may be set up so that he will appear in person, by videoconference or by telephone—and he must attend whatever format Magistrate Judge Illman chooses.

Plaintiff is cautioned that he may be sanctioned for failure to comply with an order to participate in a settlement conference, and such sanctions may include dismissal of part or all of the action. *See* Fed. R. Civ. P. 16(a), (f), and 41(b).

## CONCLUSION

1. For the reasons set forth above, defendants' motion for summary judgment (Docket No. 87) is **GRANTED IN PART AND DENIED IN PART**. All defendants are **DISMISSED** with prejudice except for Ford and this case continues regarding the January 16, 2020, incident. The amended motion to compel (Docket No. 100) is **DENIED**.

2. This action is now referred to Magistrate Judge Illman for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program. The clerk shall **SEND** a copy of this order to Magistrate Judge Illman. This case is otherwise **STAYED** until further order from the court.

**IT IS SO ORDERED.**

Dated: July 26, 2023

                                       */s/ Phyllis J. Hamilton*
                                       PHYLLIS J. HAMILTON
                                       United States District Judge