UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAVIN MAURICE RHODES,

               Plaintiff,

      v.

D. FORD, et al.,

               Defendants.

Case No. 20-cv-03128-PJH

**ORDER GRANTING SECOND MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 134, 135, 138

      This is a civil rights case brought by a state prisoner under 42 U.S.C. § 1983.  His claims arise from his detention at Pelican Bay State Prison ("PBSP").

      In an order dated July 26, 2023, the court granted in part and denied in part defendants' motion for summary judgment.  See Dkt. 103.  Specifically, the case proceeded on plaintiff's retaliation claim against defendant Ford regarding an incident on January 16, 2020.  The court concluded that plaintiff had raised a genuine issue of material fact as to whether Ford was made aware that he was the subject of plaintiff's grievance and issued a false Rules Violation Report ("RVR") as retaliation.  See Dkt. 103.

      In particular, the court's order cited an argument made in plaintiff's opposition brief, that defendant Ford was present in the law library on January 14, 2020, at the same time that plaintiff was being interviewed about the grievance that he had filed.  See Dkt. 103 at 5 (citing Dkt. 93 at 4).

      Defendant now claims that Ford could not have been present during the January 14 interview, because he was sick at home, rather than being at work that day.  Defendant sought leave to file a successive motion for summary judgment, which the

1    court granted in relevant part.  See Dkt. 133.

2          Defendant's successive summary judgment motion is now before the court, and

3    the court has reviewed the evidence, and rules as follows.

4    A.    Legal standard

5          Summary judgment is proper where the pleadings, discovery and affidavits show

6    that there is "no genuine dispute as to any material fact and the movant is entitled to

7    judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may

8    affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

9    (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

10   reasonable jury to return a verdict for the nonmoving party.  Id.

11          The moving party for summary judgment bears the initial burden of identifying

12   those portions of the pleadings, discovery and affidavits which demonstrate the absence

13   of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

14   Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  When

15   the moving party has met this burden of production, the nonmoving party must go beyond

16   the pleadings and, by its own affidavits or discovery, set forth specific facts showing that

17   there is a genuine issue for trial.  Id.  If the nonmoving party fails to produce enough

18   evidence to show a genuine issue of material fact, the moving party wins.  Id.

19          At summary judgment, the judge must view the evidence in the light most

20   favorable to the nonmoving party.  If evidence produced by the moving party conflicts

21   with evidence produced by the nonmoving party, the judge must assume the truth of the

22   evidence set forth by the nonmoving party with respect to that fact.  See Tolan v. Cotton,

23   572 U.S. 650, 656-57 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

24          "Within the prison context, a viable claim of First Amendment retaliation entails five

25   basic elements: (1) An assertion that a state actor took some adverse action against an

26   inmate (2) because of (3) that prisoner's protected conduct, and that such action

27   (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

28   reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559,

United States District Court
Northern District of California

2

1   567-68 (9th Cir. 2005) (footnote omitted); see also Pratt v. Rowland, 65 F.3d 802, 806

2   (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that

3   he was retaliated against for exercising his constitutional rights and that the retaliatory

4   action did not advance legitimate penological goals, such as preserving institutional order

5   and discipline); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same);

6   Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary

7   and capricious" sufficient to allege retaliation).  The prisoner must show that the type of

8   activity he was engaged in was constitutionally protected, that the protected conduct was

9   a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory

10  action advanced no legitimate penological interest.  Hines v. Gomez, 108 F.3d 265, 267-

11  68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

12          The mere threat of harm can be a sufficiently adverse action to support a

13  retaliation claim.  Shepard v. Quillen, 840 F.3d 686, 688-89 (9th Cir. 2016); Brodheim v.

14  Cry, 584 F.3d 1262, 1270 (9th Cir. 2009).  A retaliation claim can also be made by a

15  prisoner for adverse actions against him for making written or verbal threats to sue,

16  because such threats "fall within the purview of the constitutionally protected right to file

17  grievances."  Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) (district court erred

18  in finding that prisoner did not state a First Amendment retaliation claim for prison's

19  disciplinary actions against him for making threats of legal action if his grievances were

20  not addressed).

21  B.      Analysis

22          The background facts of the case are set forth in the court's previous summary

23  judgment order.  See Dkt. 103.  To summarize the relevant facts, defendant Ford, now

24  retired, was employed as a library technical assistant at PBSP while plaintiff was

25  incarcerated there.   See id.  On December 14, 2019, plaintiff filed an inmate appeal

26  based on his allegation that a librarian did not make copies of certain legal documents.

27  See id.  The appeal did not identify Ford as the librarian who was involved.  See id.

28          Plaintiff alleges that on January 16, 2020, Ford confiscated plaintiff's legal papers

United States District Court
Northern District of California

1   and filed a false rules violation report ("RVR") against him.  See Dkt. 103 at 5.  Plaintiff

2   alleges that the RVR was filed in retaliation for the aforementioned appeal, filed in

3   December 2019.  See id.  On February 10, 2020, Ford's name was added to the

4   grievance.  As mentioned above, plaintiff previously argued that he was interviewed

5   about the appeal in the law library on January 14, 2020, and that Ford was present in the

6   law library to overhear the interview, and that his knowledge of the appeal led to the false

7   RVR on January 16.  See id.

8       As also mentioned above, defendant's present motion is based on new evidence

9   that Ford could not have been present in the law library on January 14, 2020, because he

10  was out sick and not at work that day.  See Dkt. 134 at 8.

11      Significantly, plaintiff's opposition brief does not contest the new evidence about

12  Ford's non-presence during the January 14 interview.  See Dkt. 135-2.  Instead, plaintiff

13  argues that Ford became aware of plaintiff's appeal against him as early as December

14  27, 2019, when Ford responded to a Form 22 request for information.  See id. at 4-5.  In

15  the alternative, plaintiff argues that Ford became aware of the appeal when he (Ford)

16  was interviewed by J. Cummings, and that "there is a genuine dispute as to when

17  Cummings interviewed Ford."  See id. at 9.  Plaintiff's opposition brief also raises issues

18  regarding the credibility of Ford and Cummings.  See id. at 6-8, 10-11.

19      As to the interview of Ford conducted by Cummings, the court agrees with the

20  general proposition that its exact timing is not known.  However, in light of the other

21  evidence regarding plaintiff's appeal, the court need not definitively resolve the disputed

22  issue of when exactly the interview took place.

23      First, both Cummings and Ford have offered testimony that Cummings did not

24  inform Ford that a grievance had been filed against him personally.  Specifically,

25  Cummings's declaration states as follows:

26          Rhodes's grievance did not grieve any issues against Defendant Ford
            personally.  Rather, the grievance asserted that Rhodes was denied the
27          ability to make copies due to a policy that came from supervisory staff or
            Wendy Reynolds.  Thus, this grievance was not construed as a staff
28          complaint against D. Ford, and was not construed as a grievance against

1
2
3

Ford or his actions . As explained in the response, when I interviewed D. Ford, I only verified whether Plaintiff had been denied the ability to make legal copies as Rhodes asserted . I did not inform D. Ford that Rhodes filed a grievance against him, because the grievance was not filed against Ford, nor did I confer on Ford any knowledge that Rhodes submitted a grievance against Ford.

4

Dkt. 134-2, ¶ 5.

5

Ford's declaration states as follows:

6
7
8
9
10
11

[D]uring the interview with J. Cummings, I was not provided with any knowledge that PBSP-A-19-2840 was a grievance filed against me. The grievance did not directly assert anything against me, and it was not construed as a staff complaint against me, nor did it grieve my actions. Rather, during the interview with J. Cummings, I verified whether Plaintiff's ability to make copies was generally denied. As captured in the second-level response, I believed Rhodes grieved an issue based on his confusion regarding policies for the mailing of legal materials and the ability to make legal copies in the library, as opposed to any issue specific to me. Thus, the interview did not provide me with any knowledge that Plaintiff filed a grievance against me.

12

Dkt. 134-3, ¶ 6.

13

Defendant also cites evidence showing that plaintiff's appeal filed in December

14

2019 was handled as a complaint about prison policy, rather than as a "staff complaint,"

15

the latter of which has specific procedures, including the direct notification of the staff

16

member involved. See Dkt. 139 at 5-6. In contrast, plaintiff filed a separate grievance

17

against Ford on January 22, 2020, which was handled as a "staff complaint." See id.

18

(citing Dkt. 56-2, ¶ 9). Defendant argues that the absence of staff complaint procedures

19

with respect to the December 2019 appeal would have indicated to Ford that the appeal

20

was not directed at him personally. See Dkt. 139 at 6.

21

Overall, the court finds it significant that plaintiff's December 2019 appeal was not

22

handled as a "staff complaint," and agrees with defendant that it undermines the

23

argument that Ford's interview by Cummings would have made him aware that a

24

grievance had been filed against him personally. Thus, even if the Cummings interview

25

was conducted before Ford issued the RVR against Rhodes, Ford would still not have

26

had knowledge of a grievance filed against him.

27

For the same reason – namely, the fact that the December 2019 appeal was not

28

handled as a "staff complaint" – the court also concludes that the related Form 22, of

1   which Ford was made aware in December 2019, also would not have made Ford aware

2   that a grievance had been filed against him personally.

3        Moreover, the court notes that plaintiff's initial appeal, as filed in December 2019,

4   did specifically name a different employee of the PBSP library, showing that plaintiff was

5   aware of how to name specific employees in a grievance and could have specifically

6   named Ford in the December 2019 complaint if he had so chosen.  The court further

7   notes that plaintiff did eventually name Ford on February 10, 2020, during the grievance

8   appeal procedure, which further indicates that he was aware that he had not named Ford

9   before the RVR was filed by Ford.

10        Defendant has presented evidence that establishes that he did not know or have

11   reason to believe that the December grievance was against him personally when he filed

12   the RVR on January 16, 2020.   Plaintiff speculates that defendant could have learned

13   about the grievance during his interview with Cummings but has presented no evidence

14   that the grievance was against defendant Ford.  The court finds unpersuasive plaintiff's

15   argument that defendant Ford's knowledge that plaintiff had filed a grievance against the

16   library was sufficient to put him on notice that he faced some personal liability for the

17   conduct alleged in the grievance.  The logical extension of this argument would give rise

18   to a retaliation claim by any prisoner who had suffered an adverse action after having

19   filed a grievance against any office of the institution.  But more importantly, the evidence

20   of the institution's two-tiered system for characterizing grievances as either institutional or

21   staff, shows that Ford did not face personal liability.  Similarly, the court rejects plaintiff's

22   argument that defendant Ford should be found to lack credibility based on conduct

23   occurring after the RVR was filed.  The court finds that because defendant Ford did not

24   have knowledge that a grievance had been filed against him personally, plaintiff has

25   failed to raise a triable issue of material fact that the RVR was because of the grievance.

26   Although it appears to the court that there is also no evidence that the RVR chilled

27   plaintiff's exercise of his First Amendment rights or that the RVR did not reasonably

28   advance a legitimate correctional goal, the court did not reach these issues in the first

United States District Court
Northern District of California

6

1    summary judgment order, and defendant was not granted leave to raise them again in

2    the second motion.  Thus, those issues remain unresolved and the court's ruling is based

3    simply on the absence of a nexus between the filing of the grievance and the RVR.

4          Accordingly, for the foregoing reasons, defendant's motion for summary judgment

5    is GRANTED.

6          There are also two ancillary motions pending before the court.  Plaintiff has filed a

7    motion to correct exhibit 5 from his counsel's declaration (Dkt. 138), which is GRANTED.

8    Plaintiff has also filed a motion to seal (Dkt. 135), which is DENIED for failure to comply

9    with this district's Civil Local Rule 79-5(e), which states that "[m]otions to seal entire

10   pleadings or briefs are strongly disfavored and will be granted only in extraordinary

11   circumstances."  Plaintiff's motion to seal states that "[t]his motion is necessary because

12   defendant has designated an important document included in plaintiff's opposition as

13   'confidential attorneys' eyes only,'" but does not identify the document nor explain why

14   sealing could not be narrowly tailored to cover only the single document and any

15   substantive references to it, rather than filing the entire opposition brief and all exhibits

16   under seal.  See Dkt. 135.  For that reason, the motion to seal is denied and the

17   opposition and all the exhibits attached to the motion to seal must be filed on the public

18   docket within seven days of the date of this order.

19         **IT IS SO ORDERED.**

20   Dated: April 23, 2024

21                                          ___/s/ Phyllis J. Hamilton___

22                                          PHYLLIS J. HAMILTON
                                            United States District Judge

23

24

25

26

27

28

United States District Court
Northern District of California