UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAVIN MAURICE RHODES,

          Plaintiff,

      v.

D. FORD,

          Defendant.

Case No. 20-cv-03128-PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 193

Before the court is defendant's motion for summary judgment, seeking dismissal of the second and third causes of action in plaintiff's operative third amended complaint.

Plaintiff Kavin Maurice Rhodes is represented by his counsel, Randall Edwards, Molly Edgar, Raeshondra Dike, Michelle Abundis, and Kathryn Binder. Defendant D. Ford appeared through his counsel, Rob Bonta, Marisa Kirschenbauer, Michael J. Quinn, and Chase Goldstein. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

A.    Procedural background

This is a civil rights case brought by a state prisoner under 42 U.S.C. § 1983. His claims arise from his detention at Pelican Bay State Prison ("PBSP").

The court originally granted summary judgment on all of plaintiff's claims, in an order dated April 23, 2024. See Dkt. 140. Plaintiff appealed the order, and the Ninth Circuit reversed. See Dkt. 155.

After remand, plaintiff sought leave to file a third amended complaint, which was granted. See Dkt. 177, 181. The operative complaint asserted four causes of action

against defendant Ford, one of which was dismissed pursuant to the parties' stipulation. See Dkt. 186. That leaves three causes of action in plaintiff's operative complaint: (1) unlawful retaliation in violation of the First Amendment, by the filing of a false rules violation report ("RVR") in retaliation for an inmate grievance, (2) ) unlawful retaliation in violation of the First Amendment, by arranging to have plaintiff beaten by other inmates in retaliation for an inmate grievance, and (3) violation of the Eighth Amendment by arranging to have plaintiff beaten by other inmates. See Dkt. 182.

Defendant moves for summary judgment on only the second and third causes of action.

B.    Legal standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Id. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. Id.

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party. If evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Tolan v. Cotton,

United States District Court
Northern District of California

572 U.S. 650, 656-57 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); see also Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (contention that actions "arbitrary and capricious" sufficient to allege retaliation). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

The mere threat of harm can be a sufficiently adverse action to support a retaliation claim. Shepard v. Quillen, 840 F.3d 686, 688-89 (9th Cir. 2016); Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009). A retaliation claim can also be made by a prisoner for adverse actions against him for making written or verbal threats to sue, because such threats "fall within the purview of the constitutionally protected right to file grievances." Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017) (district court erred in finding that prisoner did not state a First Amendment retaliation claim for prison's disciplinary actions against him for making threats of legal action if his grievances were not addressed).

A person may deprive another of a constitutional right either through direct or indirect involvement. Such involvement can be established either "by some kind of direct

personal participation in the deprivation or by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." See Chaudhry v. Aragon, 68 F.4th 1161, 1169 (9th Cir. 2023).

C.    Facts

The full factual background of the case are set forth in the court's previous summary judgment orders. See Dkt. 103, 140.  To summarize the relevant facts, defendant Ford, now retired, was employed as a library technical assistant at PBSP while plaintiff was incarcerated there.  See id.  On December 14, 2019, plaintiff filed an inmate appeal based on his allegation that Ford did not make copies of certain legal documents. See id.

On or about December 27, 2019, plaintiff alleges that Ford and unnamed inmates "attempted to persuade Rhodes to withdraw" his grievance.  See Dkt. 196-1 at 7.

Plaintiff alleges that on January 16, 2020, Ford had him forcibly removed from the law library and filed a false rules violation report ("RVR") against him.  See Dkt. 196-1 at 7.  Plaintiff alleges that the RVR was filed in retaliation for the aforementioned appeal, filed in December 2019.  See id.  Plaintiff alleges that he was "effectively banned" from the law library after the January 16 incident.  See Dkt. 196-1 at 8.

Plaintiff then alleges that, on January 23, 2020, he was "paraded" in front of other inmates while officers told those inmates about plaintiff's grievance against Ford.  See Dkt. 196-1 at 7; see also Dkt. 56-3, Ex. 3 at 27, 29.[1]

Then, on January 28, 2020, Ford approved a law library request visit by plaintiff – the first such approval since the January 16 RVR incident.  See Dkt. 196-1 at 8.  Plaintiff argues that "Ford has not provided an explanation for why he arranged a library appointment for Rhodes on that particular day."  Id.

---

[1] Defendant objects to the inclusion of the January 23 allegations, arguing that they were raised for the first time in his most recent declaration.  See Dkt. 197 at 3.  While the January 23 allegations do not appear in the complaint, and could be excluded on that basis alone, the record does show that the allegations were raised in plaintiff's prior grievance (at Dkt. 56-3, Ex. 3), and thus, because there is no issue of insufficient notice, the allegations will be allowed.

Plaintiff alleges that, on January 28, he was waiting in the prison yard outside of the law library when he saw Ford on the other side of the gate.  See Dkt. 196-1 at 8. Plaintiff alleges he saw Ford "gesture in his direction, signaling to someone behind Rhodes," and as plaintiff turned around, he was "attacked and brutally beat" by four inmates, (later identified as Jordan Davis, Derick Bridgewater, Deon D. Williams, and Renard Anderson).  See id.

Plaintiff alleges that Ford conspired with the inmates to attack him, in retaliation for the filing of his grievance.

D.      Analysis

Plaintiff argues that he has presented sufficient direct and circumstantial evidence to establish that Ford directed or conspired with the assailants.  To clarify, while the parties stipulated to dismissing the conspiracy cause of action, the operative complaint characterizes Ford's offending conduct as having "conspired" with the inmates and "arranging" to have plaintiff beaten.  See Dkt. 182, ¶¶ 9, 38, 50, 54.

As for direct evidence, plaintiff relies on his own testimony about the gesture that Ford allegedly made before the attack.  Specifically, plaintiff testified that he "observed Ford look past me to someone and make a gesture and then pointed in my direction," and "as soon as I turned around the attack was already happening."  See Dkt. 196-1 at 13 (internal citation omitted).  Plaintiff argues that his "testimony itself establishes, or at minimum creates a reasonable inference, that Ford directed the four inmates to attack" him.  See id. at 13.

As for circumstantial evidence, plaintiff focuses on four points: (1) Ford scheduled plaintiff to visit the library on the day of the attack after a "two-week ban," (2) plaintiff's law library request form for January 28 contained atypical handwritten notes and whited-out corrections in the "staff use" section," (3) Ford gestured to the assailants just before the attack, and (4) video evidence of the attack was destroyed in contravention of PBSP policy.  See Dkt. 196-1 at 15-18.  In addition to those four points, plaintiff also cites the temporal proximity between his grievance against Ford and the January 28 attack.  See

United States District Court
Northern District of California

id. at 5.

Defendant's primary argument is that plaintiff has no evidence of any type of agreement or coordination between Ford and the four inmates who attacked plaintiff. Defendant also offers declarations from all four assailants, each of them asserting that Ford had no involvement with the attack.[2]  See Dkt. 193 at 5-6.  Defendant argues that plaintiff offers no evidence of Ford interacting with any of the four assailants after December 2019 (when Ford's alleged motive to retaliate arose).  See Dkt. 197 at 10.

As to plaintiff's circumstantial evidence, defendant argues that plaintiff has not shown that Ford had any access or control over PBSP's video surveillance footage, and thus any inability to locate the video cannot be attributed to Ford.[3]  See Dkt. 197 at 9.

As to Ford's alleged "gesture," defendant argues that the gesture is described in a very vague manner and cannot overcome summary judgment.

As to the library access form, defendant argues that any atypical notes or white-outs are irrelevant because Ford openly admits to approving plaintiff's visit to the law library on January 28.  See Dkt. 197 at 6.

Relatedly, defendant argues that plaintiff was not actually "banned" from the law library, and argues that plaintiff has not offered evidence that he submitted any law library access requests after the January 16 RVR that were denied.  See Dkt. 197 at 5.

The court will start by addressing each piece of circumstantial evidence individually, and then will consider them all together.  Starting with the video surveillance evidence, the court agrees with defendant's argument that plaintiff has not shown that

---

[2] Plaintiff objects to the consideration of the assailants' declarations.  See Dkt. 196-1 at 24-25.  However, plaintiff acknowledges that he was aware of the assailants' identities and had in fact identified them in his own discovery responses.  Accordingly, plaintiff's objection is overruled. The court also overrules defendant's objection to plaintiff's declaration because, as mentioned above, the January 23 allegations were already in the record.  See Dkt. 197 at 3-4; see also Dkt. 56-3, Ex. 3.

[3] Plaintiff asks the court to disregard a new declaration filed along with defendant's reply, on the topic of video evidence preservation.  Though the court will not disregard the declaration in its entirety, the court finds it has limited value, given that it provides evidence on a topic for which defendant already identified a different individual as the "person most knowledgeable" on the topic as provided by Federal Rule of Civil Procedure 30(b)(6).

United States District Court
Northern District of California

Ford had any access or control over PBSP's video surveillance footage. Ford was a library technical assistant, and the court will not assume that his position afforded him access to or control of a camera and its video recordings in the library, much less to a camera located outside the library. Moreover, PBSP is not a defendant in this matter and plaintiff has articulated no theory that would permit the court to impute PBSP's conduct to its employee. Nor is there an allegation or evidence of a conspiracy between PBSP and Ford to hide the video recording. Without any such evidence, the court cannot conclude that the inability to locate the video bears on Ford's liability.

As to the alleged irregularities on plaintiff's library access form, the court concludes that any potential irregularities are rendered irrelevant by the fact that Ford has acknowledged that he approved plaintiff's visit to the law library on January 28.

And as to the approval of the January 28 visit itself, the court agrees with defendant that, in the absence of evidence that plaintiff submitted law library requests between January 16 and January 28 that were denied, the mere approval of a request by Ford on January 28 does not, by itself, constitute circumstantial evidence of Ford's involvement in the assault by inmates. The details about plaintiff's so-called ban are murky at best. But even if plaintiff was 'effectively prohibited' from visiting the law library between January 16th and 28th, there is no evidence that Ford contacted or colluded with the inmates who attacked plaintiff before the attack.

Finally, as to the testimony about Ford's alleged gesture (which is offered as both direct and circumstantial evidence), the court notes that it is not described with any specificity, other than to say that Ford "pointed in [plaintiff's] direction." See Dkt. 195-1, Ex. N at 86 ("I observed Ford look past me to someone and make a gesture and then pointed in my direction. And as soon as I turned around, the attack was already happening."). Standing alone, the court cannot conclude that a vaguely-described "gesture" is sufficient to raise a triable issue of material fact as to the existence of a conspiracy or agreement between Ford and the inmate assailants, though the court will also consider this evidence along with the totality of the other circumstantial evidence.

But even taking all of the circumstantial evidence as a whole, none of the offered evidence serves to establish the real issue – the existence of a conspiracy or agreement between Ford and the inmates who attacked plaintiff.  In this analysis, the court also considers plaintiff's allegations about being "paraded" in front of other inmates on January 23 – but it does not change the analysis because there is no allegation or evidence that Ford was involved with the January 23 incident, nor is there any allegation or evidence of a nexus between Ford and the unnamed officers involved in the January 23 incident.

Nor does the analysis change if plaintiff's testimony about Ford's alleged "gesture" is treated as direct evidence, rather than circumstantial evidence.  Regardless of how the evidence is characterized, the fact remains that the gesture is not described with any specificity, nor does it bear on the ultimate question of the existence of an agreement between Ford and the inmates.

In short, plaintiff must establish at least some connection or interaction between Ford and the assailants in order to overcome summary judgment, and has not done so in this case.  In contrast, cases in which summary judgment was denied involve a stronger showing of coordination – even if circumstantial – between the prison employee and the attacking inmates.

For example, in Sierra v. Thompson, the plaintiff-inmate had been told by his facility supervisor (Castellanos) that retaliation was "part of the game' for inmates who filed grievances.  See 2021 WL 3864590 (E.D. Cal. Aug. 30, 2021).  In the following days, the plaintiff saw Castellanos pulling an inmate named Calderon into his office late at night. Then, within a couple of weeks, Calderon and another inmate attacked plaintiff.  After the attack, plaintiff said to them "that's crazy you do shit for the cops," and Calderon then looked at Castellanos and said "you know what's up Castellanos." See id. at *1.

On summary judgment, plaintiff Sierra argued that Castellanos instigated the attack, while the government submitted a declaration from Castellanos denying any

instigation.  The court held as follows:

> After considering these facts and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that a genuine issue of a material fact remains for trial. If Defendant Castellanos stated that "retaliation was part of the game" for litigation activities to Plaintiff, that statement could be construed as a threat against Plaintiff. Similarly, before the attack, Plaintiff observed Castellanos speaking privately with Calderon, one of the inmates who attacked Plaintiff, which could indicate that Castellanos was speaking with Calderon about assaulting Plaintiff. Finally, after the assault occurred, Plaintiff asked the inmates who assaulted him whether they worked for the "cops," to which Calderon responded, "You know what's up Castellanos!" (Id.). If one of the attackers used Castellanos' name in response to Plaintiff's question about that attack, that would be evidence a reasonable jury could consider in finding that Castellanos directed the attack.

Id. at *9.

In this case, unlike Sierra, there is no evidence of a meeting between Ford and any of the assailants, nor is there evidence of the assailants saying Ford's name when asked if the "cops" had directed the assault.  In short, plaintiff's allegations of Ford's involvement with the attack simply rely on too much speculation.  See also Peay v. Sager, 2022 WL 17819629, at *2 (3d Cir. 2022) (plaintiff "presented no evidence – other than his own speculations – that prison officials orchestrated the inmate attack").

As mentioned above, each of the four inmate assailants has submitted a declaration denying that Ford had any involvement in the attack.  Although the court is permitting those declarations, even if the court were to discount their testimony, there is no actual evidence of an arrangement between them and Ford – just plaintiff's allegation. The lack of such evidence is what makes this case distinguishable from Sierra, and more analogous to Peay.

Accordingly, defendant's motion for summary judgment is GRANTED, and summary judgment is entered on plaintiff's second and third causes of action.  The case will proceed to trial on the one remaining claim, pled as the first cause of action in the operative complaint.

There are also three ancillary motions pending before the court.  Each party filed a motion to seal certain limited exhibits submitted with the summary judgment briefs.  See Dkt. 192, 194.  The motions to seal are GRANTED.  Plaintiff also filed a motion for leave

United States District Court
Northern District of California

to file a sur-reply, which defendant opposes.  See Dkt. 198, 199.  Plaintiff's sur-reply asks the court to disregard a declaration filed along with defendant's reply.  For the reasons set forth above, the court does not disregard the declaration entirely, though its evidentiary value is limited.  However, plaintiff's proposed sur-reply was useful in evaluating the arguments about the reply declaration, and thus, plaintiff's motion for leave to file a sur-reply is GRANTED.

E.      Conclusion

For the foregoing reasons, defendant's motion for summary judgment (Dkt. 197) is GRANTED, the parties' motions to seal (Dkt. 192, 194) are GRANTED, and plaintiff's motion for leave to file a sur-reply (Dkt. 198) is GRANTED.

**IT IS SO ORDERED.**

Dated: June 12, 2026

_/s/ Phyllis J. Hamilton_
PHYLLIS J. HAMILTON
United States District Judge

United States District Court
Northern District of California