UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAVIN MAURICE RHODES,

Plaintiff,

v.

D. FORD,

Defendant.

Case No. 20-cv-03128-PJH

**ORDER DENYING MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL OR FOR ENTRY OF FINAL JUDGMENT**

Re: Dkt. No. 201

Before the court is plaintiff's motion to certify this court's summary judgment order for interlocutory appeal, or in the alternative, for entry of final judgment.

Plaintiff Kavin Maurice Rhodes is represented by his counsel, Randall Edwards, Molly Edgar, Raeshondra Dike, Michelle Abundis, and Kathryn Binder. Defendant D. Ford appeared through his counsel, Rob Bonta, Marisa Kirschenbauer, Michael J. Quinn, and Chase Goldstein. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

A. Procedural Background

This is a civil rights case brought by a state prisoner under 42 U.S.C. § 1983. His claims arise from his detention at Pelican Bay State Prison ("PBSP").

The court originally granted summary judgment on all of plaintiff's claims, in an order dated April 23, 2024. See Dkt. 140. Plaintiff appealed the order, and the Ninth Circuit reversed. See Dkt. 155.

After remand, plaintiff sought leave to file a third amended complaint, which was granted. See Dkt. 177, 181. The operative complaint asserted four causes of action

United States District Court
Northern District of California

United States District Court
Northern District of California

against defendant Ford, one of which was dismissed pursuant to the parties' stipulation. See Dkt. 186. That left three causes of action in plaintiff's operative complaint: (1) unlawful retaliation in violation of the First Amendment, by the filing of a false rules violation report ("RVR") in retaliation for an inmate grievance, (2) unlawful retaliation in violation of the First Amendment, by arranging to have plaintiff beaten by other inmates in retaliation for an inmate grievance, and (3) violation of the Eighth Amendment by arranging to have plaintiff beaten by other inmates. See Dkt. 182.

Defendant moved for summary judgment on claims (2) and (3). See Dkt. 193. The court granted defendant's motion for summary judgment on July 10, 2026. See Dkt. 200.

Plaintiff now seeks to certify the court's July 10 order for interlocutory appeal under 28 U.S.C. § 1292(b), or in the alternative, for entry of final judgment under Federal Rule of Civil Procedure 54(b).

B. Discussion

1. Motion for Interlocutory Appeal

a. Legal Standard

The rule allowing a party to seek certification to appeal an interlocutory order is a departure from the normal rule that only final judgments are appealable, and therefore it must be construed narrowly. James v. Price Stern Sloan, Inc.,283 F.3d 1064, 1067-68 n.6 (9th Cir.2002). A district court may certify an order for interlocutory review pursuant to 28 U.S.C. § 1292(b) "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir.1982) (emphasis added).

Interlocutory review is appropriate where the district court finds that the party has established (1) the existence of a controlling question of law, (2) substantial grounds for difference of opinion, and (3) that the party has shown that an immediate appeal may materially advance the ultimate termination of the litigation. In re Cement, 673 F.2d at 1026 (citing 28 U.S.C. § 1292(b)).

b. Analysis

As mentioned above, before summary judgment was granted, plaintiff's operative complaint asserted three causes of action: (1) unlawful retaliation in violation of the First Amendment, by the filing of a false rules violation report ("RVR") on January 16, 2020, in retaliation for an inmate grievance, (2) unlawful retaliation in violation of the First Amendment, by arranging to have plaintiff beaten by other inmates on January 28, 2020 in retaliation for an inmate grievance, and (3) violation of the Eighth Amendment by the same January 28 incident, arranging to have plaintiff beaten by other inmates. See Dkt. 182.

With respect to the Eighth Amendment violation, plaintiff alleged in his complaint that "Ford's actions involved excessive force." See Dkt. 182, ¶ 55. The same beating is also the basis of the First Amendment violation set forth in the second cause of action. There is no allegation that Ford himself physically engaged in excessive force against plaintiff. Thus, Ford's liability must be based upon his responsibility for the actions of others. The operative complaint alleges that those actions were comprised of the following:

(1) Ford "conspiring to have prison inmates attack and brutally beat Plaintiff" (¶ 1),

(2) "Ford had conspired with these inmates to attack" plaintiff (¶ 9),

(3) "Ford violated Rhodes's rights . . . by conspiring to retaliate against" him (¶ 12),

(4) "Complaint alleges violations of Rhodes's rights . . . and a related conspiracy to violate those rights" (¶ 14),

(5) "Ford conspired with the inmates, either directly or through an intermediary, to attack Rhodes" (¶ 38),

(6) Ford "took adverse action against" plaintiff "by arranging to have Rhodes beaten by other inmates" (¶ 50), and

(7) Ford "took adverse action against" plaintiff "by arranging to have Rhodes beaten by other inmates" (¶ 54),

As shown above, the operative third amended complaint consistently and



United States District Court
Northern District of California

United States District Court
Northern District of California

repeatedly characterizes Ford's conduct as either "conspiring" or "arranging." See Dkt. 182.

To be clear, as mentioned above, plaintiff's operative complaint initially pled a cause of action for conspiracy under 42 U.SC. § 1985, and then plaintiff stipulated to dismiss the conspiracy claim without prejudice. However, the stipulation expressly states that "this voluntary dismissal does not impact or change the factual allegations in any other paragraphs of the Third Amended Complaint or Plaintiff's three remaining claims for relief pursuant to 42 U.S.C. § 1983." See Dkt. 186 at 2; see also id. ("this voluntary dismissal shall only apply to plaintiff's fourth claim for relief, stated in paragraphs 58 through 67 of the third amended complaint").

When filing the third amended complaint, plaintiff could have chosen to limit his conspiracy-related allegations to the single asserted claim for conspiracy under § 1985. Similarly, when plaintiff dismissed the § 1985 cause of action, he could have stricken the language alleging a conspiracy or arrangement. Both times, he chose not to. Thus, when defendant filed his summary judgment motion (Dkt. 193), he justifiably challenged allegations that he either conspired with inmates or arranged for those inmates to attack plaintiff.

Plaintiff now argues that the "controlling question of law" for appeal is whether his retaliation claim "requires showing of the existence of a conspiracy, or whether a joint showing of direction or joint action is sufficient." See Dkt. 201 at 9. Plaintiff argues that the court imposed a conspiracy requirement even though none is required by the Ninth Circuit. This is incorrect. To the extent that plaintiff was confused about the court's prior ruling, the court herein clarifies that ruling.

The court evaluated whether there was evidence of a conspiracy solely because plaintiff alleged in his complaint that a conspiracy was the wrongful conduct engaged in by Ford. However, the court also directly cited the controlling Ninth Circuit authority, holding that a defendant can be liable either through direct involvement or by "setting in motion a series of acts by others which the actor knows or reasonably should know would

cause others to inflict the constitutional injury." See Dkt. 200 at 3-4 (citing Chaudhry v. Aragon, 68 F.4th 1161, 1169 (9th Cir. 2023)).

Applying the Chaudhry standard, the court considered not only whether Ford conspired to inflict the injury, but also whether the evidence supported plaintiff's allegation that he "arranged" for the attack, irrespective of whether there was a conspiracy.

Ford and the inmate attackers all declared under oath that there was no arrangement, express or otherwise, between them. See Dkt. 193-3 (Ford decl.) ("I did not arrange the January 28, 2020, altercation, nor was I involved with it in any way. In fact, I never interacted with inmates Bridgewater, Davis, Anderson, and Williams, and I do not recall who they are. I also did not act through any intermediaries to arrange the altercation."); Dkt. 193-4 (Anderson decl.) ("The January 28, 2020 altercation with Rhodes was not arranged by Ford"); Dkt. 193-5 (Davis decl.) ("I never went to the PBSP Facility A law library while I was housed there, and I never had any interactions with Ford. Ford did not contact me to arrange the January 28, 2020 altercation with Rhodes, and no person contacted me on Ford's behalf."); Dkt. 193-6 (Bridgewater decl.) ("I never went to the PBSP law library while I was housed there, and I never had any interactions with Ford. Ford did not contact me to arrange the January 28, 2020 altercation with Rhodes, and no person contacted me on Ford's behalf"); Dkt. 193-7 (Williams decl.) ("Ford did not contact me to arrange the January 28, 2020 altercation with inmate Rhodes. In fact, I have never spoken to Ford or had any other interaction with him.").

Plaintiff testified to the contrary. On a motion to dismiss, plaintiff's allegations are taken as true; but on summary judgment, even though the evidence is viewed in a light more favorable to him, he still has to produce some evidence. The only direct evidence that plaintiff produced was his own testimony that, immediately before the attack, Ford made a gesture and pointed at him. Frankly, given that plaintiff has never described the "gesture" other than the pointing, the court was left to consider whether the pointing was sufficient evidence of an arrangement, given that the circumstantial evidence was

insufficiently tied to an arrangement.

Additionally, plaintiff in this latest motion reframes Ford's conduct not as conspiring or arranging the attack, but as directing the attack. To no avail.

Chaudhry holds that liability may be premised on a defendant directing others to take adverse action, engaging in concerted action with others, or engaging in a conspiracy. Whether it is directing others or engaging in a conspiracy or arranging an attack, they all require some evidence of collusion, agreement, coordination, connection, or interaction—in other words some opportunity for Ford or someone acting on his behalf to somehow get word to the inmates of the intended target and obtain their agreement to attack the target.

To the extent that plaintiff's "directing" argument is based on the gesture/pointing by Ford, there is no explanation as to how the inmates would have understood the import of the undescribed gesture/pointing unless an agreement had been entered or instructions conveyed prior to the attack occurring. There was no evidence of any opportunity for Ford as a former assistant library technician to have had any contact with the inmates during the relevant time period. Nor is there a hint of any evidence that another civilian employee or correctional officer in fact made such contact with the attackers on his behalf. It is little more than speculation that does not rise to the level of creating a material dispute of fact such as in Sierra v. Thompson, as cited in the court's summary judgment order. See Dkt. 200 at 8-9 (citing Sierra, 2021 WL 3864590 (E.D. Cal. Aug. 30, 2021)).

Based on the above, the court concludes that plaintiff has not demonstrated the existence of a controlling question of law or substantial grounds for difference of opinion about that controlling question. Rather, what remains is the straightforward question of whether the evidence was sufficient to raise a triable issue of fact, which is inherently factual and not legal. The motion to certify the court's summary judgment order for interlocutory appeal is DENIED.

United States District Court
Northern District of California

2. Motion for Entry of Final Judgment

a. Legal Standard

Rule 54(b) states that the court "may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

b. Analysis

As an initial matter, the court points out that this case has already been pending for over six years. The court is concerned about fading memories on the parts of plaintiff and his witnesses as well as defendant and his witnesses, and particularly for the defendant, who has been retired for over four years. See Dkt. 193-3, ¶ 2.

The court also notes that the court filed its first summary judgment order on April 23, 2024, and it was not reversed until July 18, 2025 – almost 15 months later.

If this trial were scheduled much later into the future, then it might have made sense to allow plaintiff to appeal now; but since it is scheduled for October, there is insufficient reason to delay further. The court has a strong interest in resolving cases that have been pending on its docket for as long as this case has, and for those reasons, the court DENIES plaintiff's alternative request for entry of final judgment under Rule 54(b).

C. Conclusion

For the foregoing reasons, plaintiff's motion to certify the court's summary judgment order for interlocutory appeal, or the alternative, for entry of final judgment (Dkt. 201) is DENIED. The hearing set for August 20, 2026, is VACATED.

**IT IS SO ORDERED.**

Dated: August 18, 2026

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge